309 P.3d 918

Robert R. HAWK and Cecilia J. Hawk, husband and wife, Plaintiffs/Coun-terDefendants/Appellees,

v.

PC VILLAGE ASSOCIATION, INC., an Arizona corporation, Defendant/Coun-terPlaintiff/Appellant.

No. 1 CA–CV 12–0362.

Court of Appeals of Arizona, Division 1, Department A.

Sept. 3, 2013.

Tevis Reich, Flagstaff, Attorney for Appellees.

Jones, Skelton & Hochuli, P.L.C. by J. Gary Linder, Lori L. Voepel, Jonathan Paul Barnes, Jr., Phoenix, Attorneys for Appellant.

Mack, Watson & Stratman, P.L.C. by Richard V. Mack and Arizona Association of Realtors by Scott M. Drucker, General Counsel, K. Michelle Lind, Phoenix, Amicus Curiae.

## OPINION

SWANN, Judge.

¶1 In 2009, the legislature passed A.R.S. § 33–441, which renders unenforceable any covenant, restriction or condition prohibiting the posting of "for sale" signs. We hold that the superior court properly applied the statute to invalidate a restriction recorded before 2009, and that the court's order did not violate the contract clauses of the United States or Arizona constitutions. We also affirm the court's award of attorney's fees.

*FACTS AND PROCEDURAL HISTORY*

¶2 In 2009, the Hawks purchased a lot in Pine Canyon, a Flagstaff master-planned community managed by PC Village Association, Inc. The Hawks' lot, along with the other properties located in the Pine Canyon community, is subject to the community's

covenants, conditions and restrictions ("CC & Rs"), originally recorded in 2002 and amended in 2004.

¶3 Section 12.3 of the CC & Rs prohibits property owners from displaying "for sale" signs on their lots:

> No sign of any kind shall be Visible from Neighboring Property without the approval of the Village Association or the Design Review Committee, except: (a) signs used by Developer or any Related Party in connection with the development or sale of Lots, Tracts, or Condominium Property of the Property; (b) signs required by legal proceedings, or the prohibition of which is precluded by law; or (c) signs required for traffic control and regulation of Common Areas. *No "For Sale" or "For Rent" sign may be posted on any Lot, Tract, or Condominium Property.*

(Emphasis added.) Section 12.18 of the CC & Rs authorizes the Association and its agents to enter any lot where there is a violation of the CC & Rs and correct the violation at the owner's expense.

¶4 In 2011, on two consecutive days, the Hawks posted a "for sale" sign on their lot. On each occasion, the Association caused the sign to be removed. The Hawks thereafter filed an action for declaratory and injunctive relief, asking that Section 12.3 of the CC & Rs be declared unenforceable as superseded by statute, and that the Association be enjoined from removing statutorily compliant "for sale" signs from the property.

¶5 The parties filed cross-motions for summary judgment. The Hawks argued that Section 12.3 of the CC & Rs was superseded by A.R.S. §§ 33–1808(F) and 33–441, and the Association argued that those statutes were facially inapplicable and unconstitutional. The superior court granted summary judgment for the Hawks under both statutes, and enjoined the Association from removing industry-standard "for sale" signs from the Hawks' property. The court also granted the Hawks' request for attorney's fees and costs of $21,820.

¶6 The Association timely appeals. We have jurisdiction pursuant to A.R.S. § 12–2101(A)(1).

## DISCUSSION

### I. THE HAWKS WERE ENTITLED TO SUMMARY JUDGMENT UNDER A.R.S. § 33–441.

¶7 We review the grant of summary judgment de novo, viewing the facts in the light most favorable to the Association. *Andrews v. Blake*, 205 Ariz. 236, 240, ¶ 12, 69 P.3d 7, 11 (2003). We also review issues of statutory interpretation, and a statute's constitutionality, de novo. *Ballesteros v. Am. Standard Ins. Co. of Wis.*, 226 Ariz. 345, 347, ¶ 7, 248 P.3d 193, 195 (2011); *Bertleson v. Sacks Tierney, P.A.*, 204 Ariz. 124, 126, ¶ 6, 60 P.3d 703, 705 (App.2002).

### A. A.R.S. § 33–441 Supersedes the CC & Rs' Prohibition of "For Rent" and "For Sale" Signs.

¶8 The Association first contends that A.R.S. § 33–1808(F) could not supersede Section 12.3 of the CC & Rs because the relevant portion of that statutory subsection was enacted in 2007,[1] years after the CC & Rs were recorded and amended in 2002 and 2004, and does not by its terms apply retroactively. A.R.S. § 33–1808(F) provides:

> Notwithstanding any provision in the community documents, an association shall not prohibit or charge a fee for the use of, placement of or the indoor or outdoor display of a for sale, for rent or for lease sign and a sign rider by an association member on that member's property.

The statute does not purport to alter existing CC & Rs, and does not prohibit individual community members from seeking enforcement of existing restrictive covenants. Instead, the statute limits the ability of community associations to enforce restrictions on signage. We need not rest our opinion on § 33–1808(F), however, because A.R.S. § 33–441, which was enacted after § 33–1808(F),

---

1. *See* 2007 Ariz. Sess. Laws, ch. 228, § 2 (1st Reg. Sess.) (adding § 33–1808(D), which is not materially different from what is now § 33– 1808(F) with respect to the provisions governing associations' ability to prohibit "for sale" signs).

plainly invalidates provisions such as Section 12.3 of the Pine Canyon CC & Rs.

¶ 9 A.R.S. § 33–441, enacted in 2009,[2] abrogates all existing CC & R provisions that prohibit "for sale" signs:

(A) *A covenant, restriction or condition contained in any deed, contract, security agreement or other instrument affecting the transfer or sale of any interest in real property shall not be applied to prohibit the indoor or outdoor display of a for sale sign and a sign rider by a property owner on that person's property,* including a sign that indicates the person is offering the property for sale by owner. The size of a sign offering a property for sale shall be in conformance with the industry standard size sign, which shall not exceed eighteen by twenty-four inches, and the industry standard size sign rider, which shall not exceed six by twenty-four inches.

(B) *This section applies to any covenant, restriction or condition without regard to the date the covenant, restriction or condition was created, signed or recorded.* This section does not apply to timeshare property and timeshare interest as defined in § 33–2202.

(Emphases added.)

¶ 10 We reject the Association's contention that A.R.S. § 33–441 does not govern CC & Rs. First, the statute expressly refers to a "covenant, restriction or condition." If the legislature did not intend the statute to govern CC & Rs, we are at a loss to explain its choice of language. Further, CC & Rs fall within the statute's description of "contract[s] ... or other instrument[s] affecting the transfer or sale of any interest in real property." CC & Rs are contracts that create enforceable property rights and obligations that may run with the land. *See Condos v. Home Dev. Co.,* 77 Ariz. 129, 136, 267 P.2d 1069, 1073 (1954); *Garden Lakes Cmty. Ass'n v. Madigan,* 204 Ariz. 238, 241, ¶ 12, 62 P.3d 983, 986 (App.2003). Such rights and obligations affect the property's transfer or sale.

¶ 11 We also note that the Pine Canyon CC & Rs were governed by A.R.S. § 33–441 because they were "contained in [the] deed." The Hawks' warranty deed expressly incorporated "all easements, rights of way, encumbrances, liens, covenants, conditions, restrictions, obligations and liabilities as may appear of record."

¶ 12 We therefore conclude that A.R.S. § 33–441 applied to the Pine Canyon CC & Rs and, by its terms, superseded Section 12.3's prohibition of "for rent" and "for sale" signs. This conclusion is in accord with *Garden Lakes,* in which we held that certain guidelines issued by a CC & R-authorized committee concerning solar energy devices were rendered void by a statute that prohibited "[a]ny covenant, restriction or condition contained in any deed, contract, security agreement or other instrument affecting the transfer or sale of, or any interest in, real property which effectively prohibits the installation or use of a solar energy device." 204 Ariz. 238, 62 P.3d 983.

### B. *A.R.S. § 33–441 Does Not Unconstitutionally Impair the CC & Rs.*

¶ 13 The Association next contends that to the extent A.R.S. § 33–441 supersedes the CC & Rs, the statute violates the contract clauses of the federal and Arizona constitutions (U.S. Const. art. I, § 10 and Ariz. Const. art. II, § 25).

¶ 14 As an initial matter, we reject the Hawks' argument that the statute is not susceptible to analysis under the contract clauses. The contract clauses apply when states pass laws that impair the obligations of existing contracts. *Samaritan Health Sys. v.Super. Ct. (Schwartz),* 194 Ariz. 284, 293, ¶ 41, 981 P.2d 584, 593 (App.1999). Impairment exists when a statute "ha[s] the effect of rewriting antecedent contracts, that is, of changing the substantive rights of the parties to existing contracts." *Picture Rocks Fire Dist. v. Pima Cnty.,* 152 Ariz. 442, 445, 733 P.2d 639, 642 (App.1986), *disapproved of on other grounds by Republic Inv. Fund I v. Town of Surprise,* 166 Ariz. 143, 800 P.2d 1251 (1990). Here, A.R.S. § 33–441 had the effect of changing the substantive rights of the parties to the CC & Rs. The statute

---

2. 2009 Ariz. Sess. Laws, ch. 60, § 1 (1st Reg. Sess.).

deprived the Pine Canyon property owners of their vested, substantive rights under Section 12.3 to live in a sign-free community. *See Scholten v. Blackhawk Ptrs.*, 184 Ariz. 326, 330, 909 P.2d 393, 397 (App.1995) ("[W]hile a 'restrictive covenant' forbids or requires certain uses of the real property which it covers, it also confers vested rights in those owners who desire to own property where the subject uses are either required or forbidden." (citation omitted)).

¶ 15 The Association bears the burden of overcoming the presumption that the statute is constitutional. *In re Estate of Dobert*, 192 Ariz. 248, 252, ¶ 18, 963 P.2d 327, 331 (App.1998). To meet that burden, the Association must first show that the statute substantially impairs the contractual relationship. *Energy Reserves Grp., Inc. v. Kansas Power & Light Co.*, 459 U.S. 400, 411, 103 S.Ct. 697, 74 L.Ed.2d 569 (1983); *McClead v. Pima Cnty.*, 174 Ariz. 348, 359, 849 P.2d 1378, 1389 (App.1992). If there is a substantial impairment, the Association must then demonstrate the absence of a significant and legitimate public purpose behind the statute, or that the impairment is an unreasonable means of achieving that purpose. *Energy Reserves Grp.*, 459 U.S. at 411–13, 103 S.Ct. 697; *McClead*, 174 Ariz. at 359, 849 P.2d at 1389.

¶ 16 To determine whether an impairment is substantial, we must consider the parties' reasonable expectations. *Energy Reserves Grp.*, 459 U.S. at 416, 103 S.Ct. 697; *Dobert*, 192 Ariz. at 253, ¶ 21, 963 P.2d at 332. The absence of contractual language contemplating permanency, or the presence of language affirmatively contemplating change, may also be relevant. *See Smith v. City of Phoenix*, 175 Ariz. 509, 514, 858 P.2d 654, 659 (App.1992); *Robson Ranch Quail Creek, LLC v. Pima Cnty.*, 215 Ariz. 545, 552, ¶¶ 29–30, 161 P.3d 588, 595 (App.2007). Based on the language of the CC & Rs, we

conclude that the parties anticipated limits on their ability to prohibit certain types of signage. Though the CC & Rs generally prohibit nearly all signs, and specifically prohibit "for sale" signs, they exempt from the ban those signs "the prohibition of which is precluded by law." This exception is flexible—it contemplates that there will be types of signs that the law will protect, and it is not limited to legal protections in effect at the time of recordation. Because the parties anticipated that the CC & Rs would yield to laws concerning signs, we conclude that A.R.S. § 33–441 does not significantly impinge on the parties' reasonable expectations.[3]

¶ 17 Though the Association produced affidavits of multiple Pine Canyon residents who avowed that they considered "for sale" signs to be eyesores and had expected to enjoy their properties without viewing such signs, given the restriction's express exception for prohibitions banned by law, we do not find this expectation objectively reasonable. The superior court correctly found that A.R.S. § 33–441 "should be no surprise to the [Association] or other property owners."

¶ 18 For these reasons, we conclude as a matter of law that the Association failed to demonstrate a substantial impairment. On this ground, we conclude that the statute did not violate the contract clauses. We therefore need not address whether the impairment was justified under the legislature's police power. *See Robson Ranch*, 215 Ariz. at 553, ¶ 35, 161 P.3d at 596. The Hawks were entitled to summary judgment under A.R.S. § 33–441.

*II.  THE SUPERIOR COURT DID NOT ABUSE ITS DISCRETION BY AWARDING THE HAWKS THE FULL AMOUNT OF ATTORNEY'S FEES THEY SOUGHT.*

¶ 19 The Association next contends that the superior court abused its dis-

---

**3.** We also note that the pervasiveness of prior regulation in the subject area of the impairment is relevant to the question of the parties' reasonable expectations. *Nat'l R.R. Passenger Corp. v. Atchison, Topeka & Santa Fe Ry. Co.*, 470 U.S. 451, 469, 105 S.Ct. 1441, 84 L.Ed.2d 432 (1985); *Baker v. Ariz. Dep't of Revenue*, 209 Ariz. 561, 566, ¶ 17, 105 P.3d 1180, 1185 (App.2005). And statutes govern many aspects of planned commu-

nities in Arizona: assessment procedures (A.R.S. § 33–1803), meetings (A.R.S. § 33–1804), records (A.R.S. § 33–1805), sales (A.R.S. § 33–1806), liens (A.R.S. § 33–1807), flag and sign display (A.R.S. § 33–1808), parking (A.R.S. § 33–1809), solar energy devices (A.R.S. § 33–1816), and affairs of the board of directors and committees (A.R.S. §§ 33–1810 to –1815, –1817).

cretion by granting the Hawks the full amount of attorney's fees they requested under A.R.S. § 12–341.01(A)—$21,820. Section 12–341.01(A) authorizes a discretionary award of reasonable attorney's fees to the successful party in a contested action arising out of contract. We review an award of fees under that statute for an abuse of discretion, and will affirm unless there is no reasonable basis for the award. *Orfaly v. Tucson Symphony Soc'y,* 209 Ariz. 260, 265, ¶ 18, 99 P.3d 1030, 1035 (App.2004).

¶ 20 After considering the Hawks' fee applications, the Association's response, and oral argument, the superior court found that the Hawks' fee applications were reasonable and supported "under all of the factors necessary for the Court to consider." We cannot say that there was no reasonable basis for this decision.

¶ 21 We reject the Association's argument that the superior court failed to consider all relevant factors. In exercising its discretion to award fees, the court must consider various factors but need not make findings on the record. *Fulton Homes Corp. v. BBP Concrete,* 214 Ariz. 566, 569, ¶¶ 9–10, 155 P.3d 1090, 1093 (App.2007). Though reasonable minds may have balanced the factors differently, we cannot say that the superior court's decision was an abuse of discretion. *Orfaly,* 209 Ariz. at 266, ¶ 21, 99 P.3d at 1036.

¶ 22 We also reject the Association's argument that the Hawks sought fees for tasks that took their counsel an inordinate amount of time. Unsuccessful parties should not be required to pay for tasks that take opposing counsel an unreasonable amount of time. *Schweiger v. China Doll Rest., Inc.,* 138 Ariz. 183, 188, 673 P.2d 927, 932 (App. 1983). But again, on this record we cannot say that the court abused its discretion by concluding that the fees sought were reasonable.

¶ 23 Finally, we reject the Association's argument that the fee application was based on inadequate time records that contained block-billing and time attributed to administrative tasks. In a fee application, "counsel should indicate the type of legal service provided, the date the service was provided, the attorney providing the service, ... and the time spent in providing the service." *Id.* Those requirements ensure that the court has sufficient information to assess whether the hours claimed are reasonable. *Orfaly,* 209 Ariz. at 266, ¶ 23, 99 P.3d at 1036. Here, the Hawks' fee application was sufficient to allow the court to assess the reasonableness of the hours and tasks claimed.

## CONCLUSION

¶ 24 The Hawks were entitled to summary judgment based on A.R.S. § 33–441, and the attorney's fees award was reasonable. We therefore affirm. In our discretion, we grant the Hawks' request for attorney's fees on appeal under A.R.S. § 12–341.01(A), subject to their compliance with ARCAP 21. As the prevailing parties, the Hawks are also entitled to an award of costs under A.R.S. § 12–341.

CONCURRING: PATRICIA A. OROZCO, Presiding Judge, and KENT E. CATTANI, Judge.